1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DONALD R. HUENE,

11              Plaintiff,                    No. 2:11-cv-02109 JAM KJN PS

12        v.

13   U.S. DEPARTMENT OF THE
     TREASURY, INTERNAL REVENUE
14   SERVICE; SIU CHAN; and
     ANTHONY SHELLEY,

15
                Defendants.          ___     FINDINGS AND RECOMMENDATIONS
16   _____/

17              Presently before the court is defendant Internal Revenue Service's ("IRS") motion

18   for summary judgment directed at plaintiff's Freedom of Information Act ("FOIA") claims (Dkt.

19   No. 28).[1]  This court heard this matter on its civil law and motion calendar on August 23, 2012.

20              Attorney Ann E. Oliver appeared via telephone on behalf of the IRS.[2]  Plaintiff,

21   who is proceeding without counsel, failed to appear at the hearing in violation of Local

22   Rule 230(i).  The court called plaintiff just before the hearing, but plaintiff did not answer his

23   _____

24        [1]  This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).

25        [2]  The other two named defendants, Anthony Shelly and Siu Chan, were dismissed with
     prejudice through a stipulation of the parties filed pursuant to Federal Rule of Civil
26   Procedure 41(a)(1)(A)(ii) (Dkt. No. 16).

                                                1

telephone.  In response to the court's inquiry, Ms. Oliver related to the court information

contained in recent emails between her and plaintiff that plaintiff essentially chose not to appear

at the hearing because he believed the motion was adequately briefed.  Although plaintiff's

communication with Ms. Oliver does not mitigate plaintiff's failure to appear at a court ordered

hearing, the undersigned declines to impose sanctions on plaintiff at this time.  See Local Rule

110 ("Failure of counsel or of a party to comply with these Rules or with any order of the Court

may be grounds for imposition by the Court of any and all sanctions authorized by statute or Rule

or within the inherent power of the Court."); see also Local Rule 183(a) ("All obligations placed

on 'counsel' by these Rules apply to individuals appearing in propria persona.  Failure to comply

therewith may be ground for dismissal, judgment by default, or any other sanction appropriate

under these Rules.").

Upon consideration of the parties' briefs, oral arguments, and appropriate portions

of the record, the undersigned recommends that the IRS' motion for summary judgment be

granted, that judgment be entered in the IRS' favor, and that this case be closed.

I.      BACKGROUND

Generally, plaintiff's complaint concerns the alleged actions of the IRS and its

agents in connection with a continuing tax audit of plaintiff.  (See Compl. ¶ 7.)  In connection

with the audit, plaintiff requested access to documents concerning him that are alleged to be in

the possession of the IRS.  (See id.)  Specifically, plaintiff alleges that on March 21, 2011, he

"formally requested all documents in [the IRS's] possession concerning plaintiff from previous

tax filings including the previous 12 years of tax returns, the results of previous audits, and all

documents and other instructions in their possession relating to the present audit." (Id., at p. 3:1-

5.)  Plaintiff alleges that he advised the IRS of the statutory 20-day deadline to respond to his

request.  (Id., at p. 3:5-6 (citing 5 U.S.C. §§ 552(a)(6)(A)(i)-(ii), (a)(6)(C)).)

Plaintiff alleges that the IRS failed to respond to his FOIA request within 20 days.

He further alleges that he gave the IRS an extension of time in which to respond, until June 6,

1   2011, but that the IRS still did not produce documents to plaintiff.  (Compl. ¶ 7, at p. 3:18-21.)

2   Plaintiff alleges that "defendants failed to make a determination regarding plaintiff's FOIA

3   request, failed to disclose any documents or any response whatsoever within the statutory 20 day

4   time deadline pursuant to 5 U.S.C. § 552(a)(6)(i) (2009) and 5 U.S.C. § 552(a)(6)(A)(ii) (2009)

5   and have failed to respond in any manner." (Id., at p. 3:22-26.)  Plaintiff filed suit on June 8,

6   2011.

7            On March 1, 2012, the undersigned conducted a status (pretrial scheduling)

8   conference in this case, but ultimately declined to enter a scheduling order at that time for

9   multiple reasons.  (See Order, Mar. 5, 2012, at 2, Dkt. No. 15.)  In part, the undersigned believed

10  that the case might resolve because counsel for the IRS represented that she possessed documents

11  responsive to plaintiff's FOIA request and finally intended to respond to plaintiff's request.

12  Thus, the undersigned ordered the IRS to deliver the documents to plaintiff within ten days, and

13  ordered the parties to file a joint status report after plaintiff had an opportunity to review the

14  documents.  (Order, Mar. 5, 2012, at 3.)

15           The IRS notified the court that it delivered the documents responsive to plaintiff's

16  FOIA request on March 15, 2012, and that plaintiff confirmed receipt of the documents on March

17  16, 2012 (Dkt. No. 17).  Plaintiff filed a status report confirming receipt of the documents, but

18  indicating that the IRS claimed exemptions from disclosure under FOIA.  (Pl.'s Status Report,

19  Apr. 2, 2012, at 2, Dkt. No. 18.)  The court ultimately set a briefing schedule on the parties'

20  motions for summary judgment, and in so doing denied plaintiff's request for an *in camera*

21  review of the documents withheld by the IRS.[3]  (See Order, May 14, 2012, at 6, Dkt. No. 23.)

22  _____

23         [3] Plaintiff only opposes the IRS' motion on the grounds that the court should conduct an *in
    camera* review of the withheld pages.  The undersigned already determined that no such review was

24  necessary at this point, and nothing filed in connection with the IRS' motion for summary judgment
    counsels otherwise.  See Lion Raisins v. Dep't of Agric., 354 F.3d 1072, 1079 (9th Cir. 2004)

25  ("District courts have discretion to order *in camera* inspection of the actual documents the
    government wishes to withhold. 5 U.S.C. § 552(a)(4)(B).  *In camera* inspection of documents is

26  disfavored, however, where the government sustains its burden of proof by way of its testimony or

II.     UNDISPUTED FACTS

Although the IRS filed a statement of undisputed material facts ("IRS' SUF"), plaintiff failed to file a response to the IRS' statement or a statement of disputed facts, in violation of Local Rule 260(b).  Accordingly, the material facts presented by the IRS are undisputed.

The IRS represents that plaintiff made his FOIA request in a letter dated March 21, 2011, and that plaintiff requested the following:

> "any and all documents that you and your agents, the Internal Revenue Service or any other government agency has in your possession concerning myself or Yosemite Farms for the audit that is presently taking place. Finally, I further request that you send any documents, opinions, regulations, source books, manuals, or any other documents or rules that permits [sic] you to request 12 years of documents, from a taxpayer, that are already in your possession."

(IRS' SUF ¶ 6.)  Yosemite Farms is a sole proprietorship disclosed in a schedule to plaintiff's individual federal tax return, and there is no separate tax identification number or audit file for Yosemite Farms such that all documents related to Yosemite Farms are included in plaintiff's individual audit file.  (Id. ¶¶ 11-12.)

The IRS requested additional information from plaintiff in order to process plaintiff's request, and plaintiff provided that information.  (Id. ¶¶ 7-9.)  The IRS then processed plaintiff's request and searched for records that were responsive to plaintiff's request within the limits of FOIA.  (See id. ¶¶ 10-23.)

The employee who searched for records responsive to plaintiff's FOIA request, Glendsey Tucker, reviewed the recovered records and redacted materials she believed fell within FOIA's disclosure exemptions in advance of release to plaintiff.  (IRS' SUF ¶¶ 4, 24.)  Following the IRS' three requests for extensions of time to respond to plaintiff's FOIA request, the filing of this lawsuit, and an order of the court directing the IRS to respond to plaintiff's request under the

_____

affidavits.")

4

1    threat of sanctions, the IRS finally released to plaintiff what it believed was non-exempt material.

2    (See id. ¶¶ 32-37; see also Order, Mar. 5, 2012, at 3-4.)

3          The IRS located a total of 394 pages of documents responsive to plaintiff's FOIA

4    request.  (IRS' SUF ¶ 38.)  It characterizes 48 full pages and portions of two additional pages as

5    not responsive to plaintiff's request because those materials did not pertain to either plaintiff

6    individually or Yosemite Farms.  (Id. ¶¶ 39, 43.)  The IRS released 389 full pages and five

7    redacted pages to plaintiff.  (Id. ¶ 40.)  Of the five pages withheld from plaintiff, the IRS

8    determined that the pages numbered 77 and 85 contained non-responsive material that could be

9    segregated and redacted.  (Id. ¶ 41.)  It further concluded the pages numbered 56 and 62 reflected

10    information used by the IRS to "identify returns for examination," and the IRS claimed that these

11    two pages were exempt from disclosure pursuant to FOIA's exemption found at 5 U.S.C.

12    §§ 552(b)(3) and (b)(7)(E).  (Id. ¶¶ 41, 50-75.)  Finally, the IRS withheld part of page number 7

13    on the grounds that it consists of an intra-agency email reflecting opinions and thoughts

14    regarding an ongoing audit and, as a result, falls within the FOIA exemption found at 5 U.S.C.

15    § 552(b)(5).  (Id. ¶¶ 41, 45-49.)[4]

16    III.    LEGAL STANDARDS

17       A.    General Summary Judgment Standards

18          Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for

19    summary judgment, identifying each claim or defense--or the part of each claim or defense--on

20    which summary judgment is sought."  It further provides that "[t]he court shall grant summary

21

22       [4] Tucker's designation and redaction of the materials was reviewed by the IRS' counsel. Emily Lesniak, an attorney in the IRS' Office of Chief Counsel who litigates FOIA and Privacy Act cases, personally reviewed the documents Tucker designated as fully or partially non-responsive pages, i.e., pages 77, 85, and 213 though 260, and assented to those designations.  (IRS' SUF ¶¶ 42-44.)  Lesniak also personally reviewed page 7, and part of that page was withheld on Lesniak's recommendation.  (Id. ¶¶ 45, 48.)  The two remaining pages that were withheld in part, pages 56 and 62, were personally reviewed by, and withheld on the recommendation of, Barbara M. Pettoni, a supervising attorney in the IRS' Office of Chief Counsel who supervises attorneys litigating FOIA cases.  (See id. ¶¶ 54-55, 57-58, 67, 73-74.)

1  judgment if the movant shows that there is no genuine dispute as to any material fact and the

2  movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[5]  A shifting burden of

3  proof governs motions for summary judgment under Rule 56.  Nursing Home Pension Fund,

4  Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).

5  Under summary judgment practice, the moving party

6          always bears the initial responsibility of informing the district court
           of the basis for its motion, and identifying those portions of "the
7          pleadings, depositions, answers to interrogatories, and admissions
           on file, together with the affidavits, if any," which it believes
8          demonstrate the absence of a genuine issue of material fact.

9  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).

10  "Where the non-moving party bears the burden of proof at trial, the moving party need only

11  prove that there is an absence of evidence to support the non-moving party's case."  In re Oracle

12  Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ.

13  P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not

14  have the trial burden of production may rely on a showing that a party who does have the trial

15  burden cannot produce admissible evidence to carry its burden as to the fact").

16          If the moving party meets its initial responsibility, the opposing party must

17  establish that a genuine dispute as to any material fact actually exists.  See Matsushita Elec.

18  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986).  To overcome summary

19  judgment, the opposing party must demonstrate the existence of a factual dispute that is both

20  material, i.e., it affects the outcome of the claim under the governing law, see Anderson v.

21  Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores

22  Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010), and genuine, i.e., "'the evidence is such

23  that a reasonable jury could return a verdict for the nonmoving party,'"  FreecycleSunnyvale v.

24

25          [5]  Federal Rule of Civil Procedure 56 was revised and rearranged effective December 10,
    2010.  However, as stated in the Advisory Committee Notes to the 2010 Amendments to Rule 56,
26  "[t]he standard for granting summary judgment remains unchanged."

1  Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (quoting Anderson, 477 U.S. at 248).  A

2  party opposing summary judgment must support the assertion that a genuine dispute of material

3  fact exists by: "(A) citing to particular parts of materials in the record, including depositions,

4  documents, electronically stored information, affidavits or declarations, stipulations . . . ,

5  admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do

6  not establish the absence or presence of a genuine dispute, or that an adverse party cannot

7  produce admissible evidence to support the fact."[6]  Fed. R. Civ. P. 56(c)(1)(A)-(B).  However,

8  the opposing party "must show more than the mere existence of a scintilla of evidence."  In re

9  Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

10          In resolving a motion for summary judgment, the evidence of the opposing party

11  is to be believed.  See Anderson, 477 U.S. at 255.  Moreover, all reasonable inferences that may

12  be drawn from the facts placed before the court must be viewed in a light most favorable to the

13  opposing party.  See Matsushita, 475 U.S. at 587; Walls v. Central Contra Costa Transit Auth.,

14  653 F.3d 963, 966 (9th Cir. 2011).  However, to demonstrate a genuine factual dispute, the

15  opposing party "must do more than simply show that there is some metaphysical doubt as to the

16  material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find

17  for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587

18  (citation omitted).

19      B.      Standards Pertaining to FOIA

20          "The Freedom of Information Act (FOIA), 5 U.S.C. § 552, requires federal

21  agencies to make Government records available to the public, subject to nine exemptions for

22  specific categories of material."  Milner v. Dep't of Navy, 131 S. Ct. 1259, 1261-62 (2011); see

23  also 5 U.S.C. § 552(b)(1)-(9) (setting forth the nine FOIA disclosure exemptions).  "The purpose

24

25          [6] "The court need consider only the cited materials, but may consider other materials in the
    record." Fed. R. Civ. P. 56(c)(3). Moreover, "[a] party may object that the material cited to support
    or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ.
26  P. 56(c)(2).

1    of FOIA is to 'ensure an informed citizenry, vital to the functioning of a democratic society,

2    needed to check against corruption and to hold the governors accountable to the governed.'"

3    Shannahan v. IRS, 672 F.3d 1142, 1148 (9th Cir. 2012) (quoting John Doe Agency v. John Doe

4    Corp., 493 U.S. 146, 152 (1989)).  At bottom, "[d]isclosure, not secrecy, is the dominant

5    objective of FOIA."  Id. (citations and quotation marks omitted).  Accordingly, courts narrowly

6    construe FOIA's nine exemptions from disclosure, and those exemptions are "exclusive" such

7    that an agency must disclose records on request unless they fall within an exemption.  Milner,

8    131 S. Ct. at 1262; accord Yonemoto v. Dep't of Veterans Affairs, 686 F.3d 681, 687 (9th Cir.

9    2012) (stating that the "information not falling within any of the exemptions has to be

10   disclosed").  "The government bears the burden of demonstrating that an exemption applies."

11   Shannahan v. IRS, 672 F.3d 1142, 1148 (9th Cir. 2012).

12           Most FOIA cases are resolved on motions for summary judgment because the

13   facts in such cases "are rarely in dispute."  Yonemoto, 686 F.3d at 688.  "To carry their summary

14   judgment burden, agencies are typically required to submit an index and 'detailed public

15   affidavits' that, together, 'identify[ ] the documents withheld, the FOIA exemptions claimed, and

16   a particularized explanation of why each document falls within the claimed exemption.'"  Id.

17   (quoting Lion Raisins v. Dep't of Agric., 354 F.3d 1072, 1082 (9th Cir. 2004)) (modification in

18   original); see also Lahr v. Nat'l Transp. Safety Board, 569 F.3d 964, 989 (9th Cir. 2009).  The

19   referenced index, commonly referred to as a "Vaughn index,"[7] and the supporting public

20   affidavits must be from "'affiants [who] are knowledgeable about the information sought' and

21   'detailed enough to allow court to make an independent assessment of the government's claim

22   [of exemption].'"  Yonemoto, 686 F.3d at 688 (quoting Lion Raisins, 354 F.3d at 1079)

23   (modification in original).  Courts "accord substantial weight to an agency's declarations

24   regarding the application of a FOIA exemption."  Shannahan, 672 F.3d at 1148.

25   _____

26           [7]  The Vaughn index derives its name from Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

8

IV.     DISCUSSION

    A.     Adequacy of the IRS' Search For Records

        The IRS first argues that it conducted an adequate search for documents responsive to plaintiff's FOIA request, and filed a declaration in support of that argument. Plaintiff has not challenged the adequacy of the IRS' search for responsive documents or the IRS' supporting declaration.

        "FOIA requires an agency responding to a request to 'demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'"  Lahr, 569 F.3d at 986 (citing Zemansky v. EPA, 767 F.2d 569, 571 (9th Cir. 1985)); see also 5 U.S.C. §§ 552(a)(3)(C)-(D).  The agency may make this showing by submitting "reasonably detailed, nonconclusory affidavits submitted in good faith."  Lahr, 569 F.3d at 986 (citation and quotation marks omitted).  "In evaluating the sufficiency of an agency's search, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate."  Id. at 987 (citations and quotation marks omitted).

        Here, the IRS relies on the declaration of Glendsey Tucker, a Disclosure Specialist within the IRS' Privacy, Governmental Liaison and Disclosure Division, to substantiate its sufficient search for responsive records.  (See Tucker Decl. ¶ 1, Dkt. No. 29, Doc. No. 29-1.) Again, plaintiff does not challenge the adequacy of the IRS' search or Tucker's declaration.

        As noted above, it is undisputed that plaintiff made his FOIA request in a letter dated March 21, 2011, and requested:

> "any and all documents that you and your agents, the Internal Revenue Service or any other government agency has in your possession concerning myself or Yosemite Farms for the audit that is presently taking place. Finally, I further request that you send any documents, opinions, regulations, source books, manuals, or any other documents or rules that permits [sic] you to request 12 years of documents, from a taxpayer, that are already in your possession."

(IRS' SUF ¶ 6 (citing Tucker Decl. ¶ 3).)  Tucker declares that she processed plaintiff's request

1  after obtaining additional information requested from plaintiff.  (See Tucker Decl. ¶¶ 4-6.)

2         Tucker interpreted the first sentence of the request as seeking a copy of plaintiff's

3  examination file.[8]  Although plaintiff's request did not include any specific tax year, Tucker used

4  the IRS' Internal Data Retrieval System to determine that plaintiff sought records related to an

5  open audit of plaintiff's 2008 and 2009 tax years.  (See Tucker Decl. ¶ 6.)  Because the audit was

6  still open and the records pertaining to open examinations are maintained by the assigned

7  revenue agent, Tucker contacted the manager of the revenue agent assigned to the tax

8  examination on May 19, 2011, to obtain the examination file as of that date.  (See id. ¶ 7.)

9  Tucker declares that contacting the revenue agent was " the only search effort of value" and

10  "only reasonable route" to locate responsive documents.  (Id.)

11         Tucker conducted no search in regards to the second sentence of plaintiff's

12  request, which sought "any documents, opinions, regulations, source books, manuals, or any

13  other documents or rules that permits [sic] you to request 12 years of documents, from a

14  taxpayer, that are already in your possession."  (See Tucker Decl. ¶ 8.)  Tucker reasoned that this

15  aspect of plaintiff's request sought documents that fell outside of FOIA's requirements and

16  required legal research on the part of the IRS.  (Id.)  Accordingly, Tucker neither searched for nor

17  produced documents responsive to the second sentence of plaintiff's request.  (Id.)

18         Through the second sentence of plaintiff's request, plaintiff sought nothing more

19  than the IRS' legal justification for requesting 12 years of documents from a taxpayer who

20  contended that those documents are already in the IRS' possession.  But a plaintiff cannot use

21  FOIA to secure legal research regarding the Internal Revenue Code from the IRS.  See Reeves v.

22  United States, Nos. CV-S-94-1291-DFL-PAN & CV-S-94-1292-DFL-JFM, 1994 WL 782235,

23  at *2 (E.D. Cal. Nov. 16, 1994) (unpublished); see also, e.g., Anderson v. U.S. Dep't of Justice,

---

25         [8] Again, Yosemite Farms is a sole proprietorship disclosed in plaintiff's individual federal
   tax return, and no separate tax identification number or audit file exists for Yosemite Farms.  (IRS'
26  SUF ¶¶ 11-12 (citing Lesniak Decl. ¶ 6).)

1  518 F. Supp. 2d 1, 10 (D.D.C. 2007) ("To the extent that plaintiff's FOIA requests are questions

2  or requests for explanations of policies or procedures, these are not proper FOIA requests.");

3  West v. Jackson, 448 F. Supp. 2d 207, 212 (D.D.C. 2006) ("An agency is not required to provide

4  copies of federal regulations or perform legal research for the requester.").  Accordingly,

5  plaintiff's request for the IRS' legal justification for a document request was not a proper FOIA

6  request, and Tucker was not legally required to search for or create such records.

7        Based on the foregoing, and Tucker's non-conclusory declaration, the undersigned

8  concludes that the IRS performed an adequate search for records responsive to plaintiff's FOIA

9  request.  It bears repeating that plaintiff does not contend otherwise and failed to appear at the

10  hearing.

11      B.     Records Withheld Pursuant to 5 U.S.C. §§ 552(b)(3) and (b)(7)(E)

12        The IRS withheld portions of pages 56 and 62 of the responsive materials on the

13  grounds that they were exempt from disclosure under two different FOIA exemptions.  First, the

14  IRS withheld claimed the FOIA exemption provided in 5 U.S.C. § 552(b)(3), otherwise known as

15  "Exemption 3," which protects documents that are "specifically exempted from disclosure by

16  statute."  5 U.S.C. 552(b)(3); accord Shannahan, 672 F.3d at 1145.  The IRS relies on an

17  exemption provided in 26 U.S.C. § 6103(b)(2) in conjunction with Exemption 3.  Second, the

18  IRS claimed the FOIA exemption provided at 5 U.S.C. § 552(b)(7)(E), or "Exemption 7(E),"

19  which protects from disclosure "records or information compiled for law enforcement purposes"

20  to the extent that the production of such law enforcement records or information "would disclose

21  techniques and procedures for law enforcement investigations or prosecutions, or would disclose

22  guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably

23  ////

24  ////

25  ////

26  ////

1    be expected to risk circumvention of the law."[9]

2           The information redacted from pages 56 and 62 consists of "Discriminant

3    Function" scores, or "DIF scores," which are "are part of the standards used by the Service to

4    evaluate tax returns, and play an important role in the Service's decision to audit certain tax

5    files." (Lesniak Decl. ¶ 9; see also Pettoni Decl. ¶¶ 7-9, 11-12.)  See also Gillin v. IRS, 980 F.2d

6    819, 822 (1st Cir. 1992) (per curiam) ("DIF scoring is a mathematical technique used to identify

7    tax returns most in need of examination or audit."); Pully v. IRS, 939 F. Supp. 429, 438 (E.D.

8    Va. 1996) ("Utilizing a statistical technique known as discriminant function scores . . . , the IRS

9    calculates certain tolerances outside of which audits become more likely.  DIF scores also enable

10   the IRS to determine which taxpayers may face fraud investigations, and to identify the particular

11   method of collection should be used with particular taxpayers.") (footnote omitted); Small v.

12   IRS, 820 F. Supp. 163, 165 n.4 (D.N.J. 1992) ("DIF scores are standards used by the IRS for the

13   selection of returns for audit.  They are the primary method by which tax returns are selected for

14   _____

15        [9]   The IRS' counsel repeatedly refers to "26 U.S.C. § 6103(b)(7)(E)" in arguing the
applicability of Exemption 3.  (See IRS' Memo. of P. & A. In Supp. of Mot. for Summ. J. ("IRS'
16   Memo.") at 10-11.)  Emily M. Lesniak's declaration also cites to this purported provision.  (Lesniak
Decl. ¶ 9.)  Of course, had the IRS' counsel, who is a trial attorney with the Tax Division of the U.S.
17   Department of Justice, attempted to retrieve "26 U.S.C. § 6103(b)(7)(E)," she would have found that
no such sub-section exists in the United States Code.  Had the IRS' counsel reviewed the declaration
18   of Barbara M. Pettoni submitted in support of the IRS' argument as to the proper withholding of
portions of pages 56 and 62, counsel would have found that Pettoni recommended that portions of
19   pages 56 and 62 be withheld pursuant to Exemption 3 in conjunction with 26 U.S.C. § 6103(b)(2).
(Pettoni Decl. ¶ 7.)  Pettoni separately recommended withholding based on the _FOIA_ exemption
20   found at _5 U.S.C. § 552(b)(7)(E)_, not the non-existent "26 U.S.C. § 6103(b)(7)(E)."  (Pettoni Decl.
¶ 8 (discussing "FOIA exemption (b)(7)(E)").)  Although it appears upon review of the IRS' reply
21   brief that counsel realized her error (see Reply Br. at 4), counsel was not forthcoming about the error
contained in the IRS' moving papers or in Lesniak's declaration.  Moreover, contrary to the IRS'
22   counsel's characterization at the hearing, her and Lesniak's errors constituted more than a mere
sentence construction error.  (See IRS' Memo. at 10 ("The Service properly withheld information
23   on pages 56 and 62 . . . under 5 U.S.C. § 552(b)(3) . . . , in conjunction with 26 U.S.C. § 6103(b)(2)
and (b)(7)(E)."); see also id. at 11 ("Additionally, 26 U.S.C. § 6103(b)(7)(E) exempts from
24   disclosure . . . ."); id. at 12 ("26 U.S.C. § 6103(b)(7)(E) is an exemptive statute for the purposes of
Exemption 3, and prevents the disclosure of the DIF score."); Lesniak Decl. ¶ 9 ("The Service
25   withheld, in part, two pages pursuant to FOIA exemptions (b)(3) in conjunction with 26 U.S.C.
§ 6103(b)(2) and (b)(7)(E) . . . .").)  Of concern, this is not the first instance of what can only be
26   characterized as inattention to detail by the IRS' counsel in this case and the same counsel in the
related case of Huene v. U.S. Dep't of Treasury, No. 2:11-cv-02110 JAM KJN PS (E.D. Cal.).

1    audit by the IRS.").

2          In regards to Exemption 3 and 26 U.S.C. § 6103(b)(2), documents exempt from

3    disclosure under 26 U.S.C. § 6103 can be protected under FOIA's Exemption 3.[10]  See, e.g.,

4    Shannahan, 672 F.3d at 1145.  Section 6103(b)(2), governing the confidentiality and limited

5    disclosure of returns and "return information," precludes the "disclosure of standards used or to

6    be used for the selection of returns for examination, or data used or to be used for determining

7    such standards, if the Secretary determines that such disclosure will seriously impair assessment,

8    collection, or enforcement under the internal revenue laws."  26 U.S.C. § 6103(b)(2) (un-

9    enumerated portion).  In her declaration, Barbara M. Pettoni declares that "the Secretary has so

10   determined."  (Pettoni Decl. ¶ 6.)

11         Under the language of Section 6103(b)(2), DIF scores constitute standards used or

12   to be used for the selection of returns for examination, and courts have held that DIF scores are

13   exempt from release under FOIA pursuant to Exemption 3 and 26 U.S.C. § 6103(b)(2).  See, e.g.,

14   Gillin, 980 F.2d at 822 (applying Exemption 3 and 26 U.S.C. § 6103(b)(2) to exempt DIF scores

15   from disclosure under FOIA); Buckner v. IRS, 25 F. Supp. 2d 893, 898 (N.D. Ind. 1998)

16   (exempting DIF scores from disclosure pursuant to Exemptions 3 and 7(E)); accord Inman v.

17   Comm'r of Internal Revenue, 871 F. Supp. 1275, 1277 (E.D. Cal. 1994); Small, 820 F. Supp. at

18   165-66; cf. Long v. IRS, 891 F.2d 222, 224 (9th Cir. 1989) (re-affirming on remand its holding

19   that the IRS was not required to disclose data used to develop DIF scores).  Plaintiff cited no

20   authority to the contrary.  Accordingly, the IRS permissibly withheld portions of pages 56 and 62

21   and is entitled to summary judgment.

22   ////

23

24         [10]  Exemption 3 applies in conjunction with a statute that either "requires that the matters be
     withheld from the public in such a manner as to leave no discretion on the issue"; or "establishes
     particular criteria for withholding or refers to particular types of matters to be withheld."  See 5
25   U.S.C. § 552(b)(3)(A). Section 6103 is an "exempting statute" within the meaning of Exemption 3.
     See Willamette Indus., Inc. v. United States, 689 F.2d 865, 867 (9th Cir. 1982); Aronson v. IRS, 973
26   F.2d 962, 964 (1st Cir. 1992).

1    Additionally, the undersigned concludes that the IRS properly invoked

2 Exemption (7)(E) to withhold plaintiff's DIF scores.  Courts have concluded that the release of a

3 taxpayer's DIF scores could reasonably be expected to risk circumvention of the law, as provided

4 in 5 U.S.C. § 552(b)(7)(E), in that the release of such scores could enable taxpayers to determine

5 how to lower DIF scores in order to avoid audits.  See, e.g., Buckner, 25 F. Supp. 2d at 898

6 ("Because DIF scores are investigative techniques, and the release of DIF scores could harm the

7 regulatory capacity of the IRS, DIF scores are exempt from disclosure under FOIA."); Pully, 939

8 F. Supp. at 438 ("The sensitive nature of the DIF scores is manifest.  If taxpayers obtained access

9 to this information, they could develop techniques to avoid 'flagging' the IRS computers.  This

10 would require the Service to employ more elaborate procedures to apprehend unscrupulous

11 taxpayers."); Small, 820 F. Supp. at 166 ("If the DIF scores were made public, taxpayers could

12 impede the IRS's investigative standards for determining which taxpayers should be audited and

13 will allow taxpayers to circumvent the law by developing strategies to avoid audits.").  On the

14 basis of these persuasive authorities, and the lack of any opposition by plaintiff, the undersigned

15 recommends that the IRS also be granted summary judgment insofar as Exemption 7(E) is

16 concerned.

17    C.    Documents Withheld Pursuant to 5 U.S.C. § 552(b)(5)

18    The IRS withheld a portion of page 7 of the responsive materials on the grounds

19 that it was exempt from disclosure pursuant to 5 U.S.C. § 552(b)(5), otherwise known as

20 "Exemption 5."  Exemption 5 protects from disclosure under FOIA documents consisting of

21 "inter-agency or intra-agency memorandums or letters which would not be available by law to a

22 party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Exemption 5

23 "shields 'those documents, and only those documents, normally privileged in the civil discovery

24 context.'"  Carter v. U.S. Dep't of Commerce, 307 F.3d 1084, 1088 (9th Cir. 2002) (quoting

25 NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975)).  "In light of the strong policy of the

26 FOIA that the public is entitled to know what its government is doing and why, [E]xemption 5 is

14

1    to be applied as narrowly as consistent with efficient Government operation." <u>Lahr</u>, 569 F.3d

2    at 979 (citation and quotation marks omitted, modification in original).

3           The IRS claims that page 7 falls within its "deliberative process" privilege,

4    "which shields certain intra-agency communications from disclosure to allow agencies freely to

5    explore possibilities, engage in internal debates, or play devil's advocate without fear of public

6    scrutiny." <u>Lahr</u>, 569 F.3d at 979.  The deliberative process privilege is available in the context of

7    records withheld pursuant to FOIA's Exemption 5 and, accordingly, "Exemption 5 covers

8    documents reflecting advisory opinions, recommendations and deliberations comprising part of a

9    process by which governmental decisions and policies are formulated." <u>See</u> <u>Carter</u>, 307 F.3d at

10    1088-89 (citation and quotation marks omitted).  "To fall within this privilege, a document must

11    be both 'predecisional' and 'deliberative,'" the Ninth Circuit Court of Appeals has described

12    these terms as follows:

13          A "predecisional" document is one prepared in order to assist an agency
            decisionmaker in arriving at his decision, and may include

14          recommendations, draft documents, proposals, suggestions, and other
            subjective documents which reflect the personal opinions of the writer

15          rather than the policy of the agency.  A predecisional document is a part of
            the "deliberative process," if the disclosure of the materials would expose

16          an agency's decisionmaking process in such a way as to discourage candid
            discussion within the agency and thereby undermine the agency's ability to

17          perform its functions.

18    <u>Lahr</u>, 569 F.3d at 979-80 (quoting <u>Assembly of Cal. v. U.S. Dep't of Commerce</u>, 968 F.2d 916,

19    920 (9th Cir. 1992)).

20           Here, the IRS filed a declaration of its counsel, Emily Lesniak, who reviewed

21    page 7 and recommended its withholding.  Lesniak describes page 7 as follows:

22          The withheld portion of the page consists of an intra-agency e-mail that in
            part contains opinions and thoughts regarding an on-going examination.

23          Specifically, the email contains the opinions and thoughts of the revenue
            agent's manager assigned to the audit of plaintiff's 2008 and 2009 tax

24          returns.  The page being withheld in part is page 7.

25    (Lesniak Decl. ¶ 8.)

26    ////

1    Although Lesniak's declaration could be more precise and include more detail

2  about the email in question to assist the court in determining whether the IRS properly claimed

3  Exemption 5, the declaration and the IRS' counsel's representations to the court as an officer of

4  the court substantiate that the portion of page 7 withheld from plaintiff is an intra-agency

5  communication that is pre-decisional and deliberative.  First, although Lesniak's declaration is

6  not abundantly clear, the IRS' counsel represented that the email was sent by the assigned

7  revenue agent's manager, Anthony Shelly, to the assigned revenue agent, Siu Chan, and another

8  IRS employee, Christain Beck.  The IRS' counsel also represented that all but two sentences of

9  the email were disclosed to plaintiff.

10    Second, the email is pre-decisional because it addressed, and was made in the

11  course of, an ongoing audit or examination of plaintiff's 2008 and 2009 tax returns.  (Lesniak

12  Decl. ¶ 8.)  "A document may be considered predecisional if it was prepared in order to assist an

13  agency decisionmaker in arriving at his decision."  Carter, 307 F.3d at 1089; but see Lahr, 569

14  F.3d at 964 ("[W]e have rejected the application of the privilege to protect from disclosure the

15  routine collection of data and analysis where the agency could point only to speculative or

16  generalized purposes for which the information would be used.").  The strong implication from

17  Lesniak's declaration is that the email was prepared to assist in the ultimate resolution of the

18  continuing audit of plaintiff's 2008 and 2009 tax years.  At the hearing, the IRS' counsel

19  explained as an officer of the court that the two sentences redacted from the email reflected

20  Shelly's thoughts and opinions about an interview conducted with plaintiff regarding the audit at

21  issue, and a letter received during the audit.  The undersigned concludes that the redacted portion

22  of the email is pre-decisional.

23    Third, the email is deliberative in that the disclosure of that email would reveal

24  the mental processes of decision-makers.  See Carter, 307 F.3d at 1090.  If disclosed, the email in

25  question would reveal the opinions and thoughts of the assigned revenue officer's manger

26  concerning the ongoing examination of plaintiff's 2008 and 2009 tax years, and would

discourage candid discussion within the agency.  See id. (stating that courts must focus on the effect of the release of the materials, and that the "the key question in Exemption 5 cases [is] whether the disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions") (citation and quotation marks omitted, modification in original).

On the undisputed facts before the court, and with no opposition by plaintiff, the undersigned finds that the portion of page 7 withheld from plaintiff is covered by Exemption 5. Accordingly, the IRS is entitled to summary judgment insofar as page 7 is concerned.

D.    Documents Withheld as Non-Responsive

Finally, the IRS withheld portions of pages 77 and 82 as non-responsive, and the IRS filed undisputed, non-conclusory declarations substantiating as much.  In light of the IRS' declarations, and without any opposition by plaintiff, the undersigned recommends that summary judgment be entered in the IRS' favor insofar as the redaction of pages 77 and 82 is concerned.

V.    CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.    Defendant Internal Revenue Service's motion for summary judgment (Dkt. No. 28) be granted.

2.    Judgment be entered in defendant Internal Revenue Service's favor.

3.    The Clerk of Court be directed to close this case and vacate all dates.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d).

Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

            IT IS SO RECOMMENDED.

DATED:  August 23, 2012

                                 KENDALL J. NEWMAN
                                 UNITED STATES MAGISTRATE JUDGE